## Appeal of CARLISLE GARMENT CO.

Docket No. 3632.   Submitted July 13, 1925.   Decided March 31, 1926.

1. The taxpayer had on hand at December 31, 1918, raw materials which declined in price during the year 1919. There is no evidence that such materials were sold at a loss during the year 1919. *Held,* that the decline in price of the raw materials in 1919 is not deductible from the inventory at December 31, 1918.

2. The taxpayer was incorporated in June, 1913, and acquired in exchange for its capital stock the assets of a going business including tangibles and intangibles. *Held,* upon the evidence, that the intangibles had no cash value at the time they were paid in for shares of stock.

*Fayette B. Dow, Esq.,* for the taxpayer.
*Ellis W. Manning, Esq.,* for the Commissioner.

Before TRUSSELL, LITTLETON, and SMITH.

This is an appeal from the determination of deficiencies in income and profits tax for the years 1918 to 1921, as follows:

| | |
|---|---|
| 1918 | $4, 597. 92 |
| 1919 | 7, 953. 04 |
| 1920 | 1, 966. 51 |
| 1921 | 65. 23 |
| | 14, 582. 70 |

The deficiencies result from adjustments made in the taxpayer's inventories as of December 31, 1918, and January 1, 1919, and from the exclusion from invested capital of certain amounts alleged to have been the value of good will paid for shares of stock.

### FINDINGS OF FACT.

The taxpayer is a Pennsylvania corporation with its principal office at Carlisle, and is engaged in the manufacture of women's dresses and garments. It was incorporated in June, 1913, with a capital stock of a par value of $81,000, and in July, 1913, this stock was exchanged for the going business of a limited partnership, known as J. I. Plank, Ltd. The taxpayer acquired the assets of the partnership and assumed its liabilities. Subsequently, a stock certificate for $1,000 was canceled, leaving outstanding stock of a par value of $80,000.

The tangible assets of the partnership were received by the taxpayer at a value of $97,477.01, and the liabilities assumed amounted to $44,097.02. Good will was entered on the books of the taxpayer at $27,620.01, representing the difference between $81,000, the par value of the stock issued, and the tangible assets less liabilities.

The profits and losses of J. I. Plank, Ltd., from 1906 to the date of incorporation were as follows:

| Year. | Profits. | Losses. | Year. | Profits. | Losses. |
|---|---|---|---|---|---|
| 1906 | $13, 255. 96 | | 1910 | $5, 938. 18 | |
| 1907 | 14, 279. 51 | | 1911 | | $9, 986. 17 |
| 1908 | 1, 791. 17 | | 1912 | | 9, 107. 29 |
| 1909 | 462. 70 | | 1913 (part) | 2, 183. 20 | |

From the date of incorporation through 1916 the profits and losses were:

| Year. | Profits. | Losses. | Year. | Profits. | Losses. |
|---|---|---|---|---|---|
| 1913 (part) | | $7, 203. 45 | 1915 | $4, 734. 77 | |
| 1914 | | 3, 097. 52 | 1916 | 16, 166. 49 | |

The taxpayer and its partnership predecessor were engaged chiefly in the manufacture of one-piece dresses for women. The styles adopted were plain and the material used was cotton cloth. A few years prior to the incorporation of the business, the management was changed, the officer then placed in charge procured the services of French designers, and the garments were manufactured on a more elaborate scale. After incorporation the business was reorganized, and in 1914 the design of the dresses became somewhat similar to that used prior to the employment of the French designers.

At the time of taking the inventory on December 31, 1918, certain goods previously ordered by the taxpayer to cost $3,126.92 were in transit. These goods were not included in the inventory. They were received in January following, and at that time " Purchases (Merchandise)" was debited on the books of account and " Accounts Payable " was credited. No previous entry with reference to the goods was made on the books. In determining the taxpayer's income for 1918, the Commissioner added the cost of the goods so in transit to the taxpayer's closing inventory, but failed to increase merchandise purchases by a like amount.

The taxpayer's inventory at December 31, 1918, was taken at cost. During 1919 the market value of goods included in the closing inventory for 1918 was materially decreased. Similar goods were available on the market at a lower price and the taxpayer was forced to accept lower prices for garments ordered in 1918 to be delivered in 1919 than the contract prices of sale. The original prices on these orders were based on cost of materials in 1918. Upon revaluation of the closing inventory for 1918, it was found that none of the goods had appreciated in value, but that certain items of raw material entered in the inventory at $24,207.55 cost price had a replacement value in 1919 of $20,895.60. These items entered into goods manufactured and sold during the year 1919.

The Commissioner has excluded from the taxpayer's invested capital for the years involved in this appeal $27,620.01 attributed to good will. He has also increased net income for 1918 by $3,126.92, representing the cost of goods in transit at December 31, 1918, and has reduced net income for 1919 by a like amount. He has also increased the net income for 1918 by $3,311.95, representing the difference between the cost of raw materials included in the inventory at December 31, 1918, and the market price for same in the early part of 1919.

OPINION.

SMITH: 1. The net result of the Commissioner's adjustment, as set forth in his deficiency letter to the taxpayer from which the appeal was taken, was to increase income for the year 1918 in the

amount of $3,126.92 and to decrease income for 1919 in a like amount,. upon the theory, apparently, that the goods in transit as of December 31, 1918, should have been taken into the closing inventory of that year, and, if this had been done, would have resulted in increasing income for the year 1918. The Commissioner however, overlooked,. the fact that if no entries were made in respect of such merchandise, or if complete entries were made, the result, so far as concerns 1918 or 1919 income, would be identical. In other words, if goods in transit were not charged into cost of merchandise for the year 1918 and were not included in closing inventory, cost of goods sold would be unaffected, since merchandise purchases would be understated, as would the closing inventory. Cost of merchandise purchased enters into the computation of cost of goods sold by the process of adding the inventory at the beginning of the year to the cost of merchandise purchased during the year, and deducting therefrom the closing inventory. It is manifest that, if a like amount is omitted from merchandise purchased and from closing inventory, the same result, so far as the cost of goods sold is concerned, is arrived at as if two like amounts were included in cost of merchandise and closing inventory. Consequently, the Commissioner was in error in transferring $3,126.92 from income in 1919 to income in 1918, irrespective of whether he was right in principle in requiring the taxpayer to include goods in transit in inventory as of the close of 1918.

2. With reference to the losses claimed in connection with the 1918 inventory on account of decreased values of raw materials in 1919, the taxpayer relies on the provisions of section 234 (a) (14) of the Revenue Act of 1918, which provides as follows:

(14) (a) At the time of filing return for the taxable year 1918 a taxpayer may file a claim in abatement based on the fact that he has sustained a substantial loss (whether or not actually realized by sale or other disposition) resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for such taxable year, or from the actual payment after the close of such taxable year of rebates in pursuance of contracts entered into during such year upon sales made during such year. In such case payment of the amount of the tax covered by such claim shall not be required until the claim is decided, but the taxpayer shall accompany his claim with a bond in double the amount of the tax covered by the claim, with sureties satisfactory to the Commissioner, conditioned for the payment of any part of such tax found to be due, with interest. If any part of such claim is disallowed then the remainder of the tax due shall on notice and demand by the collector be paid by the taxpayer with interest at the rate of 1 per centum per month from the time the tax would have been due had no such claim been filed. If it is shown to the satisfaction of the Commissioner that such substantial loss has been sustained, then in computing the taxes imposed by this title and by Title III the amount of such loss shall be deducted from the net income. (b) If no such claim is filed, but it is shown to the satisfaction of the Commissioner that during the taxable year 1919 the taxpayer has sustained a substantial loss of the character above described

then the amount of such loss shall be deducted from the net income for the taxable year 1918 and the taxes imposed by this title and by Title III for such year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252.

The above section provides that there may be deducted from income in the year 1918 a loss sustained by a taxpayer resulting from any material reduction of the value of the inventory. A material reduction of the value of an inventory is not, in itself, sufficient to sustain a claim for a loss under this section. The material reduction must result in a substantial loss. The substantial loss, moreover, must be one resulting from any material reduction of *the* value of the inventory. In other words, the material reduction which results in a loss must relate to the value of the entire inventory and not to the value merely of isolated portions thereof. Upon this latter point the taxpayer has introduced evidence to the effect that some portions of the inventory declined at some time during 1919 and that no portions of the inventory showed an increase. It may, therefore, be accepted that there was a material reduction at some time during 1919 in the value of the inventory taken as at the close of 1918. This reduction in value, as measured by the possible replacement of the materials at a lower cost during 1919, amounted to approximately $3,300, or some 12 or 13 per cent of the original cost of the materials showing such decline. It appears further that the taxpayer manufactured the goods in its inventory at the close of 1918 and sold them during the year 1919. It does not appear that any loss whatever was sustained by the sale of these inventoried articles, nor does it appear that they were on hand at the close of 1919, included in the inventory of that year, or that the raw material content at that time of such inventoried goods, even if they were on hand at the close of 1919, could have been inventoried at a market value of less than cost. Under these circumstances, there is no evidence that the taxpayer has sustained a substantial loss resulting from any material reduction in the value of the inventory as taken at the close of 1918, and it is therefore not entitled to deduct the amount of the loss claimed for that year.

3. With reference to the item of good will, the taxpayer has attempted to show that there was a certain amount of good will in the business at the time of incorporation. There appears to be no good reason why good will was entered on the books of the corporation at $27,620.01. The taxpayer submitted a statement as to profits and losses of the business for the years 1906 to 1916. The periods just prior and subsequent to incorporation were unprofitable, and losses were sustained. It is contended that these losses were the result of gross mismanagement prior to incorporation. Witnesses

testified that designers were employed who did not understand the taxpayer's class of trade, and that unsuitable materials were purchased, resulting in heavy losses.    But even though it be conceded that the business was mismanaged during the period in question, that is not sufficient to show that there was good will in the business; or, conceding that there was good will, that such good will had the value claimed for it by the taxpayer.    The contention of the taxpayer, in short, is that the value of good will can not be computed on the basis of earnings of the business because gross mismanagement prevented normal profits from being made.    Conceding this, there is no other evidence upon which a value for such good will as might exist could be based, and we are of the opinion that the amount attributed by the taxpayer to good will was properly excluded from invested capital.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*